Argued and submitted September 28, 2018, resubmitted en banc March 7;
reversed and remanded with instructions to reinstate the judgment
October 9, 2019

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

TALON DUANE RAMOZ,
*Defendant-Respondent.*

Jackson County Circuit Court
15CR47950; A163802

451 P3d 1032

The state appeals from an order granting defendant a new trial under ORCP 64 B. Defendant was convicted at a jury trial of two counts of rape in the first degree and two counts of unlawful sexual penetration in the first degree. After the judgment of conviction was entered, defendant moved for a new trial under ORCP 64 B(1) on the basis that the jury instructions had omitted an element of the crime. During trial, defendant had stipulated to two of the four instructions he now claims as error and had not objected to any. The trial court granted defendant's motion for a new trial under ORCP 64 B(1), concluding that the instructional error was an irregularity in the proceeding of the court. The state appealed. *Held*: The trial court erred in granting defendant a new trial. A trial court's failure to instruct the jury properly, under the circumstances presented here, is not an irregularity in the proceedings of the court under ORCP 64 B(1).

Reversed and remanded with instructions to reinstate the judgment.

En Banc

Timothy Barnack, Judge.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before Egan, Chief Judge, and Armstrong, Ortega, Hadlock, DeVore, Lagesen, Tookey, DeHoog, Shorr, James, Aoyagi, and Powers, Judges, and Landau, Senior Judge.

SHORR, J.

Reversed and remanded with instructions to reinstate the judgment.

Armstrong, J., dissenting.

**SHORR, J.**

The state appeals the trial court's order granting defendant a new trial under ORCP 64. The issue in this case is whether a defendant is entitled to a new trial under ORCP 64 B when the defendant initially consents to the trial court's jury instructions, but, after the verdict, the trial court concludes that the same instructions were incorrectly given.[1] ORCP 64 B(6) provides that a party may obtain a new trial where there has been an "error in law" affecting the party's substantial rights, but that rule requires that the party object or except to the claimed error. Defendant did not object or except to the claimed error here. Indeed, as to two of the four contested jury instructions, defendant stipulated to the very instructions that he now claims were given in error, and he did not object or except to any of them after they were read in open court. Under these circumstances, defendant was not entitled to a new trial under ORCP 64 B(6).

Defendant nevertheless contends that he is entitled to a new trial under ORCP 64 B(1) because the claimed instructional error is an "irregularity in the proceedings of the court." ORCP 64 B(1) does not require a party to object or except to the "irregularity" before seeking a new trial. As we discuss below in greater detail, that argument is unavailing. A trial court's failure to instruct the jury properly, although error, is not an "irregularity in the proceedings of the court." To conclude otherwise in these circumstances would permit a party to either stipulate or fail to object to instructional error and nevertheless obtain a new trial as an "irregularity" under ORCP 64 B(1). That would render meaningless the requirement that a party object to legal error to obtain a new trial under ORCP 64 B(6). Even assuming that there may be instances in which a trial court's conduct can be *both* legal error and "an irregularity in the proceedings of the court," there is nothing in this record that demonstrates

---

[1] Because this case may arise before us again on defendant's appeal, we do not prejudge that appeal or decide whether the trial court, in fact, erred in giving the jury instructions at issue here. Rather, we address whether a trial court, in the first instance, can grant a motion for new trial based on a claim of instructional error—instructions to which the parties initially stipulated and did not object.

that the claimed error here is an irregularity in the proceedings. Instructional error, although unfortunate, can occur as part of the regular proceedings of any trial and occasionally does. That type of error is subject to correction through a direct appeal. If the instructional error is not objected or excepted to, it is subject to plain-error review. *State v. Gray*, 261 Or App 121, 129, 322 P3d 1094 (2014). When a claimed instructional error is not objected to or excepted to, however, it is not a proper subject of a motion for new trial under ORCP 64 B(1).

We therefore conclude that the trial court erred in granting defendant a new trial. We reverse and remand with instructions to reinstate the judgment.

## I.   THE PROCEDURAL AND FACTUAL BACKGROUND TO THE STATE'S APPEAL

### A.   *The Historical Facts*

The state alleged that defendant raped the victim and put his fingers into her vagina when the victim was unconscious and under the influence of a pharmaceutical sedative and alcohol. Defendant was charged with two counts of rape in the first degree, ORS 163.375, and two counts of unlawful sexual penetration in the first degree, ORS 163.411. Defendant was tried before a jury. Defendant contested the charges and argued that the victim was awake, competent, and had consented to the sexual activity.

The jury found defendant guilty on all charges. Nearly three months after the jury verdict, defendant moved for a new trial under ORCP 64 B(1), arguing that the trial court had failed to instruct the jury that defendant had to have a specific mental state—knowingly—to be guilty of the charged crimes.[2] The court granted that motion because it had mistakenly omitted the mental state element from the instructions given to the jury. The state assigns error to that ruling, contending that the court had no basis under ORCP

---

[2] Defendant also invoked ORCP 64 B(5) as a basis for granting him a new trial, arguing that the evidence was insufficient to justify a jury verdict. The trial court, however, explicitly declined to grant a new trial on that ground, and defendant does not pursue that argument in this court.

64 B to invalidate the jury verdict and grant defendant a new trial.

B.  *The Jury Instructions*

As noted, the issue in this case arises out of the court's instructions to the jury and the possible error therein. We spend some time discussing what we know and do not know about how that error occurred.

Both sides proposed jury instructions on the elements of first-degree rape (Counts 1 and 2) and first-degree unlawful sexual penetration (Counts 3 and 4). Defendant proposed jury instructions that merely identified the instructions by the Uniform Criminal Jury Instruction (UCrJI) number and title, namely UCrJI 1603 (listing the elements of rape in the first degree)[3] and UCrJI 1609 (listing the elements of unlawful sexual penetration in the first degree). The state proposed the same uniform instructions but submitted the full text of those instructions.

Unfortunately, although the state's proposed written instructions on the first-degree rape charges matched the elements of UCrJI 1603, its proposed written instructions on the first-degree unlawful sexual penetration charges did not match the elements of UCrJI 1609. The state's proposed instruction for the first-degree rape charge appropriately contained the "knowingly" element in both the general description of the law of rape in the first degree and the specific instruction of what the state had to prove as to the particular acts alleged against defendant in this case. The state's proposed instructions for the unlawful sexual penetration charges included the "knowingly" mental state element when they generally defined an element of the charge (*e.g.*, defining an element of unlawful sexual penetration in the first degree as "knowingly penetrat[ing] the vagina of another person with any object other than the penis or the mouth of the person"), but, significantly, omitted the term "knowingly" when they specifically described what the state was required to prove as to defendant's conduct toward the

---

[3] The state presented two theories of first-degree rape based on the victim's lack of consent due to her (1) physical helplessness and (2) mental incapacitation. For the same reasons, the state also presented two theories of unlawful sexual penetration.

victim (*e.g.*, instructing that the state must prove beyond a reasonable doubt that defendant "Talon Ramoz penetrated the vagina of [the victim] with an object other than his penis or mouth"). In other words, as to the sexual penetration charges, the instructions failed to instruct specifically on the mental element that defendant had to have when he penetrated the victim.

At the close of the state's evidence, the trial court and the parties took a break to finalize the jury instructions in a conversation that occurred off the record. Unfortunately, we do not know precisely what happened during that recess. When the parties later litigated defendant's motion for a new trial, defendant's counsel acknowledged that he had "stipulated to [the state's] jury instruction." Defendant's counsel also represented, incorrectly, that those instructions "complied with the uniform criminal jury instructions." In fact, the state's instructions, as set out above, did follow the uniform criminal jury instructions as to the first-degree rape charge, but did not follow the uniform criminal jury instructions with respect to the first-degree sexual penetration charge.

At the close of trial, the court orally instructed the jury and provided them with written instructions. As noted, the state's proposed written instructions, which defendant stipulated to, had included a specific *mens rea* element as to the rape charges, but not as to the unlawful sexual penetration charges. For some reason that is not clear from the record, the court left out the specific *mens rea* element in the final oral and written instructions on *all* four counts of rape and sexual penetration. The court consistently included the element "knowingly" in the general description of the law, but consistently omitted the term "knowingly" whenever it described what the state had to prove as it applied to the particular acts for which defendant was charged. For example, the court's instruction on Count 1 stated as follows:

> "Oregon law provides that a person commits the crime of rape in the first degree if the person *knowingly* has sexual intercourse with another person [who] is incapable of consent by reason of physical helplessness. In this case, to establish the crime of rape in the first degree (count 1), the

state must prove beyond a reasonable doubt the following elements:

"(1) The act occurred on or about October 24, 2015[;]

"(2) Talon Duane Ramoz had sexual intercourse with [the victim]; and

"(3) [The victim] was incapable of consent by reason of physical helplessness."

(Emphasis added.) The court read those instructions to the jury aloud in court, and neither the state nor defendant objected to them. After the court read the instructions for all four counts to the jury, the jury was sent to deliberate, and the court asked the attorneys if they had any exceptions to the jury instructions. Both attorneys said no. There is no record of any objection to the final written instructions. The jury ultimately returned a verdict of guilty on all counts.

## C. *Defendant's Motion for New Trial*

Nearly three months after the jury reached its verdict, defendant filed a motion for a new trial. In support of his motion, defendant cited ORCP 64 B(1), which provides that a trial court may grant a new trial if there has been an "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial." In an affidavit in support of his motion, defendant's counsel stated that the state's proposed instructions for all four counts "*included* the appropriate mental state, to which I stipulated," but that, "due to a typographical clerk error, the final version of the jury instructions did not include the mental state." (Emphasis in original.) Defendant now acknowledges on appeal that, for the two first-degree sexual penetration counts (Counts 3 and 4), the omission of the mental state element originated in the parties' stipulated jury instructions, and that that omission "may account for the error in the court's final instruction" for the first-degree rape charges (Counts 1 and 2).

At a hearing on defendant's motion for new trial, defendant argued that the "clerical error" in omitting the relevant mental state from the instructions denied him a fair trial. Defendant also argued that the omission was

"plain error" such that his conviction would ultimately be reversed on appeal. Defendant argued that, by granting him a new trial, the trial court could expeditiously resolve the error and avoid appellate review, stating, "We're doing this a little bit differently; maybe a little bit more actively. We're trying to take care of this before it has to head up to the Court of Appeals."

Initially, the trial court stated that the issue was one that "should go to the Appellate Court for a decision." However, after hearing arguments from both parties, the court granted defendant's motion "based on procedural grounds." The court agreed with defendant that the omission was "plain error" and "not consistent with what the law is." The court then explained that its decision was grounded in a concern for judicial efficiency, given that the court believed that the Court of Appeals would ultimately reverse defendant's conviction due to the erroneous instruction:

> "I tend to agree with [the state] to some extent *** whether this is appropriate for the Appellate Court to decide or myself.

> "In my situation, to me looking at this[,] it's plain error. And it [would] almost be like setting something up for [the Court of Appeals] to send it right back down. And the whole time that's occurring that would take three to four years to do.

> "*****

> "But in this case, I know I made a mistake. Period. I don't need the Court of Appeals to tell me I made a mistake. I'm owning this one. This is on me.

> "*****

> "I don't know *** if it's any irregularity or not. It—it certainly [was] a mistake on my part. And I don't know whether the Court of Appeals—I—I do know that they would send it back to me."

The court explained that, by giving the jury a general instruction on Oregon law that included the "knowingly" element and then omitting "knowingly" from the more specific instructions, which applied the law to defendant's case, the court had essentially told the jury that "[t]his is the law but

you don't have to consider it." The court granted defendant's motion and vacated the judgment of conviction. Although the court did not identify ORCP 64 B(1) in its ruling—and, as noted above, stated it was unsure if there was an "irregularity" as opposed to a mistake, we understand the court's decision to be implicitly based on that provision because the court granted the new-trial motion and expressly rejected defendant's alternative basis for relief under ORCP 64 B(5).

## II.   ANALYSIS

We now turn to the sole legal issue before us—whether a trial court may grant a motion for new trial under ORCP 64 B(1) if the court provided jury instructions to which the parties stipulated and did not object, but the trial court later concludes, post-verdict, that the instructions mistakenly stated the law. We review the grant of a motion for new trial for abuse of discretion, but, to the extent that the decision, as here, is based on an interpretation of law, we review for legal error. *State v. Woodman*, 195 Or App 385, 387, 97 P3d 1263 (2004), *aff'd*, 341 Or 105, 138 P3d 1 (2006).

On appeal, the state argues that the trial court had no legal basis under ORCP 64 B to grant a new trial for an erroneous jury instruction when defendant failed to object to the instructions. Defendant argues that the jury instruction error was an "irregularity in the proceedings" under ORCP 64 B(1) because he was unaware of the error when the jury instructions were given, and because the error prevented him from having a fair trial. Therefore, we address whether the omission of the "knowingly" element in the special jury instructions was an "irregularity in the proceedings" under ORCP 64 B(1). For the reasons stated below, we conclude that it was not.

We begin with the unexceptional premise that when a trial court incorrectly instructs a jury, that is legal error. *See State v. Harper*, 296 Or App 125, 126, 436 P3d 44 (2019) (stating that we review the trial court's jury instructions for legal error); *State v. Sparks*, 267 Or App 181, 195, 340 P3d 688 (2014), *rev den*, 357 Or 325 (2015) (stating same). Therefore, if there was an erroneous instruction here, that error would be a legal error. We are aware of no Oregon law

that treats an erroneous jury instruction as anything other than a legal error.

As noted, a party may move for a new trial under ORCP 64 B based on legal error. However, ORCP 64 B limits the instances when a court may grant such a motion. ORCP 64 B(6) provides that a new trial may be granted following a jury trial where the party's substantial rights were materially affected by "[e]rror in law occurring at the trial *and objected to or excepted to by the party making the application*." (Emphasis added.)

Here, the trial court could not have granted a new trial under ORCP 64 B(6) because, as discussed above, defendant did not "object to" or "except to" any of the instructions when they were read aloud in court and provided to the jury. Indeed, defendant affirmatively stipulated to two of the instructions on the unlawful penetration charges that were ultimately given to the jury using the same text that defendant stipulated to, namely, without the "knowingly" for both the general and specific part of the instruction. Defendant stipulated to the instructions for Counts 3 and 4 despite the fact that those instructions never included the specific *mens rea* elements that defendant now claims should have been part of the instructions given. Under those circumstances, defendant would not be entitled to a new trial under ORCP 64 B(6). *See Maulding v. Clackamas County*, 278 Or 359, 366, 563 P2d 731 (1977) (applying *former* ORS 17.610(7) (1977), the statutory predecessor to ORCP 64 B(6), and holding that the defendant could not obtain a new trial based on an erroneous jury instruction when the defendant had not objected to or excepted to the instruction when given).

Defendant—as well as the dissent—essentially contends that the analysis under ORCP 64 B(6) is irrelevant because a legal error can also be an "[i]rregularity in the proceedings of the court *** by which [the aggrieved] party was prevented from having fair trial" under ORCP 64 B(1). We examine the full text of that subsection below. We pause to note that, at least *in this circumstance* where the party stipulated to some of the instructions and further failed to object or except to all of the instructions, it would render ORCP 64 B(6) meaningless to treat that type of error

as an irregularity in the proceeding under ORCP 64 B(1). Defendant could, as he did here, stipulate and not object to instructions, as required by ORCP 64 B(6), but ultimately still obtain a new trial after a jury verdict because he contends that the agreed-to instructions were in error. We assume, without deciding, that there may be other circumstances where a claimed legal error may also be "an irregularity in the proceeding" and that both subsections can coexist in such circumstances without rendering meaningless the requirement in ORCP 64 B(6) that parties object to or except to legal error. But that is not possible in this circumstance where the claimed error was an incorrect instruction read and provided to the jury openly in court without objection or exception by defendant.

Turning our focus to ORCP 64 B(1), it provides:

> "A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> "(1)   Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial."

There are, therefore, three grounds for relief under this subsection: (1) an irregularity in the proceedings of the court, jury, or adverse party that prevented the movant from having a fair trial; (2) an order of the court that prevented the movant from having a fair trial; or (3) abuse of discretion that prevented the movant from having a fair trial. Defendant contends that the omission of the "knowingly" element in the special jury instructions was an "irregularity in the proceedings of the court" that prevented defendant from having a fair trial.

We must, therefore, determine the meaning of the phrase "irregularity in the proceedings of the court" in ORCP 64 B(1). When construing the ORCPs, we use the same analytical framework as when we construe a statute. *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 381, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001).

We first consider the rule's text and context, then consider any pertinent legislative history, all in furtherance of the overarching goal to effectuate the intent of those who promulgated the rule. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Here, neither the legislature nor the Council on Court Procedures, which initially promulgated the Oregon Rules of Civil Procedure in 1978, has defined the term "irregularity" or explained what is meant by the phrase "irregularity of the proceedings of the court." As we have previously explained, the latter phrase remains unchanged from its 1862 enactment in the Deady Code. *See McCollum v. Kmart Corporation*, 228 Or App 101, 110, 207 P3d 1200 (2009), *vac'd on other grounds*, 347 Or 707, 226 P3d 703 (2010) ("Those provisions, perhaps surprisingly, are derived from the Deady Code and are remarkably similar to analogous provisions as originally enacted in 1862[.]").[4] At that time, an "'irregularity' meant a '[d]eviation from * * * any common or established rule' or 'deviation from method or order; as the ***irregularity* of proceedings**.' Noah Webster, 1 *An American Dictionary of the English Language* (unpaginated) (1828) (emphasis in original; boldface added)." *Id.* at 113. An irregularity in the proceedings occurs within the meaning of ORCP 64 B(1), then, when there is a "deviation from an established rule or a usual practice or method." *Silberman-Doney v. Gargan*, 256 Or App 263, 270, 303 P3d 333 (2013).

We have not yet considered the precise issue presented by this case, namely whether an instructional error can be an irregularity in the proceedings of the court under ORCP 64 B. However, a brief review of our previous cases

---

[4] Indeed, the phrase predates the Deady Code, appearing for the first time in the civil code enacted by the 1853 territorial legislature. Revised Statutes of Territory of Oregon, An Act to Regulate Proceedings in Actions at Law in the Supreme and District Courts, ch II, title VII, § 36, 96 (1853). A review of the report of the elected commissioners who drafted the 1853 code did not reveal any additional information regarding the drafters' intent regarding the meaning of the phrase "irregularity in the proceeding." *See* Kelly, James, et al., *Report of the Commissioners Elected to Prepare a Code of Laws for Territory of Oregon*, 1 (1853) (explaining in a letter to the legislative assembly that, for the sake of efficiency, the commissioners "submit the code which we have prepared without making any further remarks upon it").

helps to illuminate the principle that "a trial court's arguably questionable ruling does not render proceedings that are proper procedurally 'irregular' for purposes of ORCP 64 B." *Id.* at 270.

In *Silberman-Doney*, for instance, we held that no irregularity occurred when the trial court incorrectly warned the parties that the defendants would be entitled to attorney fees if the defendants prevailed at trial. The court's warning prompted the parties to settle. Two days later, the court notified the parties that it had made a mistake in stating that the defendants would be entitled to attorney fees. Thereafter, plaintiff moved for a new trial claiming an irregularity under ORCP 64 B(1). The court granted the plaintiff's motion. The defendant appealed and we held that the court's warning was not an irregularity in the proceedings because, notwithstanding the trial court's error, "[s]uch rulings on legal issues bearing on a trial are to be expected and, of course, occur regularly," and, as is the case here, neither party registered an objection. *Id.* at 271. We further noted that the trial court's regret that it believed it had committed legal error did not render aspects of the proceeding irregular under ORCP 64 B(1). *Id.* at 273. That is equally true here; a trial court's jury instructions are to be expected and occur regularly in *every* jury trial. They are also subject to objection and exception.

Similarly, we have held that the trial court's denial of a request for an *in camera* inspection and a grant of a motion *in limine* were not irregularities in the proceedings under ORCP 64 B(1), even though the court may have wished in hindsight that it had ruled differently in the first instance, when "the submission and consideration of those matters conformed to well-established practice." *McCollum*, 228 Or App at 113.

If a court provides an incorrect jury instruction, even one that it did not intend, it is not deviating from an established rule, practice, or method in the "proceedings of the court." It is, as in the cases above, resolving a legal issue and then instructing the jury on the law. On this record, there was nothing in the court's reading of the instruction that deviated from the standard practice.

Defendant contends that the instruction itself was an error that caused an unfair trial and, therefore, was an irregularity in the proceedings of the court.[5] But legal errors by trial courts, although unfortunate, happen and are subject to assignment of error on appeal after judgment. Incorrect jury instructions are not "irregularities in the proceedings of the court."

As noted, we do not know precisely what happened off the record that led to the omission of the mental element from the instructions. We know that the parties stipulated to two instructions that were given as they had been stipulated to and that two others that, likely due to a clerical mistake and a mistaken combination of the four instructions, were ultimately given in a form to which the parties did not stipulate.[6] Defendant, however, did not object to any of the instructions after the court openly read them and later provided them in writing to the jury. It is undeniable that there was a mistake in the drafting process of the jury instructions that led to a claimed legal error by the court, but that was not an irregularity in the proceedings of the court. Parties exchange proposed jury instructions in every trial. Parties also regularly provide proposed instructions for the court to deliver. Courts also sometimes decide instructions on their own and reject the parties' proposed instructions. Unfortunately, in all of those instances, the instructions can sometimes contain error. Significantly, the instructions are not final until delivered to the jury in court with an opportunity for all parties to object or except to the instructions.

---

[5] Defendant contends that he was unaware that the instructions did not contain the *mens rea* element. Defendant maintains that the trial court impliedly found as fact that defendant was unaware of the mistake. The state essentially contends that defendant is deemed to have been aware of the mistake as a legal matter because defendant did not object to the instruction when it was read in open court. This dispute has potential significance because it is "well established" that a party waives any objection to an irregularity in the proceedings of the court that is known to a party, but that the party fails to call to the trial court's attention. *State v. Carrasco-Montiel*, 279 Or App 64, 79, 379 P3d 529, *rev den*, 360 Or 568 (2016). However, we do not reach that issue because, even assuming defendant was unaware of the mistake, the mistakenly delivered jury instruction is potential legal error and not an irregularity in the proceedings of the court.

[6] Defendant's affidavit in support of his motion for a new trial does not identify who prepared the final instructions, but states that, "due to a typographical clerk error, the final version of the jury instructions did not include the mental state."

The dissent contends that the proceedings of the court were irregular because the trial court's

"failure to include a culpable mental state in the instructions was a result of *its* inattention. It knew that a culpable mental state is an element of the crimes on which the jury needed to be instructed, and the uniform instructions that the parties requested and the typed version of the instruction submitted by the state on first-degree rape included a mental-state element, yet the court failed to notice that the instructions that it prepared and gave omitted that element."

299 Or App at 805-06 (Armstrong, J., dissenting) (emphasis in dissent). However, instructional error *always* arises out of a trial court's oversight and failure to fulfill its obligation to instruct the jury correctly. We assume that trial courts never intend to instruct a jury incorrectly. If that were the test to apply to determine an irregularity in the proceedings of the court, all instructional error would amount to an irregularity in the proceedings. The dissent's contention that the jury instructions given here were a "product of inattention, not intention" has no meaningful distinction in this context. 299 Or App at 806 (Armstrong, J., dissenting). That an error occurred in instructing the jury does not make the proceeding irregular regardless of whether the error derived from a clerical error, an incorrect combination of the parties' proposed instructions, an incorrect reading of them to the jury, or a court's error in interpreting and then providing the correct law within the instruction. Those are all forms of possible legal error—all unintended and unfortunate, but subject to a motion for new trial under ORCP 64 B(6) only if objected or excepted to. That does not mean that defendant or any other party does not have recourse. Ultimately, all error is subject to appeal after judgment regardless of preservation under a plain error standard.

The dissent's reliance on our recent opinion regarding clerical errors in the context of an ORCP 71 correction to a general judgment is misplaced. *See Yarbrough v. Viewcrest Investments, LLC*, 299 Or App 143, 449 P3d 902 (2019). The clerical error at issue in *Yarbrough* was contained in a general judgment. ORCP 71 specifically permits trial courts to correct clerical errors "arising from oversight or omission

\*\*\* at any time on [the court's] own motion or on the motion of any party[.]" ORCP 71 A. The text of ORCP 71 is distinct from ORCP 64 B, wherein a court is authorized to set aside a judgment entered pursuant to a *jury verdict* and grant a new trial only in a specified set of circumstances. ORCP 64 B(6) is clear that when the error is one of law, the party adversely affected must have objected or excepted to the error. Even assuming that the assigned error here derived from a clerical error, the error was one of law because it was an error in instructing the jury. The instructions were read in open court and defendant did not object or except to the instructions. ORCP 64 B does not permit a court to invalidate a jury's verdict and grant a new trial in such a circumstance.

We, therefore, decline to adopt a construction of "irregularity of the proceedings" under ORCP 64 B(1) that would have the effect of opening the door for future litigants to seek a new trial for claimed instructional error that they had either stipulated to or not objected or excepted to. A proper basis for granting a new trial upon a claim of instructional error or other legal error lies within ORCP 64 B(6), which provides that a new trial may be granted when there has been an "[e]rror in law occurring at the trial and objected to or excepted to by the party making the application." We decline to adopt a construction of ORCP 64 B(1) that would—at least in this circumstance—essentially render meaningless ORCP 64 B(6)'s requirement that parties must object or except to errors of law. *See* ORS 174.010 ("In the construction of a statute, \*\*\* and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."). For instructional error that has not been objected or excepted to at trial, aggrieved parties should seek relief not by moving for a new trial that invalidates a jury verdict but by filing a direct appeal that seeks plain-error review or perhaps, if later necessary in criminal cases, through post-conviction relief.

The trial court erred when it granted defendant a new trial because the instructional error claimed here is not an "irregularity in the proceedings of the court" that would justify granting a new trial under ORCP 64 B(1). Accordingly, we reverse and remand with instructions to reinstate the judgment.

Reversed and remanded with instructions to rein-state the judgment.

**ARMSTRONG, J.,** dissenting.

The instructions that the trial court gave in this criminal case did not tell the jury that it had to find that defendant had acted with a culpable mental state when he committed the crimes for which the jury convicted him, *viz.*, first-degree rape and first-degree unlawful sexual penetration. Defendant moved for a new trial based on that omission in the court's instructions, which the trial court granted under ORCP 64 B(1) on the ground that its failure to instruct the jury on an element of the crimes constituted an irregularity in the proceedings of the court. The majority reverses the grant of a new trial, reasoning that an error in instructing the jury to which defendant did not object or except is not an irregularity in the proceedings for which a new trial can be granted. I respectfully disagree with that conclusion and would affirm the trial court's grant of a new trial.

To place my disagreement in context, it's important to be clear about the source of the error in instructing the jury. Both the state and defendant submitted lists of proposed jury instructions that included the uniform criminal jury instructions for the crimes with which defendant was charged. The applicable uniform instructions were UCrJI 1603 on first-degree rape and UCrJI 1609 on first-degree unlawful sexual penetration, both of which include a culpable mental state as an element of the crimes. The state also submitted typed versions of the instructions for those crimes. The typed version of the instruction for first-degree rape included a culpable mental state as an element of that crime. However, the typed version of the instruction for first-degree unlawful penetration did not include a culpable mental state as an element of that crime.

The court and parties had an off-the-record discussion about jury instructions at which defendant stipulated to the use of the state's proposed instructions, which defense counsel mistakenly understood to include culpable mental states for *both* crimes. The typed versions of the instructions

that the court prepared, and that the court read to the jury, did not include culpable mental states as an element of *either* crime. In other words, the instructions prepared by the court apparently used as a template the state's typed instruction for first-degree unlawful sexual penetration, which did not include a culpable mental state as an element that the state had to prove to convict defendant of the crime. For example, the court's instruction on Count 1 stated as follows:

> "Oregon law provides that a person commits the crime of rape in the first degree if the person knowingly has sexual intercourse with another person [who] is incapable of consent by reason of physical helplessness. In this case, to establish the crime of rape in the first degree (count 1), the state must prove beyond a reasonable doubt the following elements:
>
> "(1)   The act occurred on or about October 24, 2015[;]
>
> "(2)   Talon Duane Ramoz had sexual intercourse with [the victim]; and
>
> "(3)   [The victim] was incapable of consent by reason of physical helplessness."

Nothing in the record indicates that anyone noticed the omission in the instructions of a culpable mental state that the state had to prove to convict defendant, and no one objected or took exception to the omission. The jury convicted defendant of the charged crimes, and the court entered judgments on the convictions.

Roughly three months after the jury returned its verdict, defendant moved under ORCP 64 for a new trial, invoking both ORCP 64 B(1)—which authorizes a trial court to grant a new trial to a party if there has been an "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial"—and ORCP 64 B(5)—which authorizes the grant of a new trial for "[i]nsufficiency of the evidence to justify the verdict or other decision, or that it is against law." The trial court rejected the motion for a new trial under ORCP 64 B(5) but granted the motion under ORCP 64 B(1). The court reasoned that it was responsible for accurately rendering the instructions

used to instruct the jury, and, through inadvertence or inattention, it had failed to do that. As it explained:

> "But in this case[,] I know I made a mistake. Period. I don't need the Court of Appeals to tell me I made a mistake. I'm owning this one. This is on me.

> "Because ultimately I'm—I'm the one [who] makes a decision on what instructions should be read and what instructions should not be read. And I have to review the instructions to make those determinations.

> "So, you two—you two could provide instructions completely different from what the law is but ultimately it's my decision. So, ultimately it's my mistake and ultimately it's my error that this is—this is happening."

The state appealed the order granting a new trial, and the majority reverses the order. In doing so, the majority focuses on *defendant's inattention* to the trial court's failure to include a culpable mental state in its instructions on the charged crimes. It notes that ORCP 64 B(6) provides authority for a court to grant a new trial for legal error "occurring at the trial and objected to or excepted to by the party making the [new trial] application" and reasons that a construction of ORCP 64 B(1) to cover instructional error to which a party failed to object would "essentially render meaningless ORCP 64 B(6)'s requirement that parties must object or except to errors of law." 299 Or App at 802. It concludes, therefore, that instructional error is categorically excluded from constituting an irregularity in the proceedings under ORCP 64 B(1). Hence, the trial court erred in granting a new trial under that provision.

The majority's reasoning is flawed. The focus of ORCP 64 B(1) for purposes of this case is on an "[i]rregularity in the proceedings *of the court*." (Emphasis added.) Hence, the proper focus is on *the court's actions* and whether *they* were irregular. Here, the trial court recognized that its failure to include a culpable mental state in the instructions was a result of *its* inattention. It knew that a culpable mental state is an element of the crimes on which the jury needed to be instructed, and the uniform instructions that the parties requested and the typed version of the instruction submitted by the state on first-degree rape included a mental-state

element, yet the court failed to notice that the instructions that it prepared and gave omitted that element. From the court's perspective, the omission was an irregularity, that is, "a '[d]eviation from * * * any common or established rule' or 'deviation from method or order; as the ***irregularity of proceedings***.'" *McCollum v. Kmart Corporation*, 228 Or App 101, 113, 207 P3d 1200 (2009), *vac'd on other grounds*, 347 Or 707, 226 P3d 703 (2010) (quoting Noah Webster, 1 *An American Dictionary of the English Language* (unpaginated) (1828) (emphasis in original; boldface added)).

The omission can fairly be considered to be a scrivener's error that originated with the state's effort to help the court by preparing typed versions of the uniform criminal jury instructions as applied to defendant and, in doing so, inadvertently omitting the culpable mental state from the instruction on first-degree unlawful sexual penetration. The court or its staff apparently compounded the error by using the typed instruction on first-degree unlawful sexual penetration as a template for the instruction on first-degree rape. The parties and the court intended the jury to be instructed in accordance with the uniform criminal jury instructions on the charged crimes, and neither the parties nor the court realized that the instructions that the court gave failed to do that. Although the instructions were legally erroneous, the error was the product of inattention, not intention.

No doubt, inattention by courts in the conduct of proceedings occur now and again, but it is not part of the regular work of courts. Inattention is, in fact, the antithesis of regular work. ORCP 64 B(1) authorizes courts to grant a new trial when an irregularity by the court in conducting proceedings is of sufficient magnitude to deny a party a fair trial, which is the basis on which the court granted a new trial in this case.

Properly understood, the instructional error at issue here is a clerical error rather than an error that is the result of an exercise of the judicial function. We recently applied that distinction in *Yarbrough v. Viewcrest Investments, LLC*, 299 Or App 143, 449 P3d 902 (2019). There, the trial court entered a general judgment of foreclosure against a defendant in the case, Principal Holding Co., that dismissed

the plaintiff's claims against other defendants, including Viewcrest Investments. The court thereafter entered a limited judgment in favor of the plaintiff against Viewcrest based on a settlement to which the plaintiff and Viewcrest had agreed that was supposed to have been embodied in a limited judgment entered before the court entered a general judgment.

Both Principal and Viewcrest appealed the respective judgments, and the Appellate Commissioner entered a show-cause order as to why he should not vacate the limited judgment and dismiss the appeal of it on the ground that entry of the general judgment before entry of the limited judgment rendered the limited judgment a nullity. However, the commissioner included in his order a suggestion that "the designation of the respective judgments as general and limited judgments may be correctable under ORCP 71." *Id*. at 147 (internal quotation marks omitted).

In response to the commissioner's suggestion, the plaintiff moved under ORCP 71 B for the trial court to correct the general judgment by redesignating it to be a limited judgment. After a hearing, the court granted the motion, explaining:

> "Under ORCP 71 A the court may, on its own motion, correct clerical mistakes in judgments, order, or other parts of the record and errors therein arising from oversight or omission 'may be corrected by the court at any time on its own motion or on the motion of another party'. It is clear to the court that the submission of the general judgment by plaintiff was done in error simply because there is no other explanation consistent with the facts in this case. *** The court has a vested interest in making sure its order, and judgments are correct and reflect a proper ruling of the court. The court likewise has an interest in correcting its own errors. Therefore the court can and does, on its own motion, as well as plaintiff's, correct the general judgment to render it a limited judgment."

*Id*. (internal quotation marks omitted; ellipsis in original). After further proceedings in the trial and appellate courts, the trial court ultimately entered corrected judgments under ORCP 71 A that, in effect, redesignated the original general judgment as a limited foreclosure judgment against

Principal and entered a new limited judgment against Viewcrest. Both Principal and Viewcrest appealed those judgments.

Among the questions that we resolved on appeal was whether the correction of the judgments constituted the correction of clerical errors that the trial court had authority to make under ORCP 71 A. In concluding that they were, we applied the distinction between clerical and judicial errors that the Supreme Court had recognized in *Hubbard v. Hubbard*, 213 Or 482, 487-88, 324 P2d 469 (1958):

> "Clerical * * * covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge."

*Yarbrough*, 299 Or App at 158 (internal quotation marks omitted; ellipsis in original). We reasoned that the entry of the general judgment was a judicial action, but the entry of it did not reflect a conscious decision by the trial court to enter such a judgment, that is, a judgment that, in fact, dismissed the claims against the defendants other than Principal and that foreclosed the entry of a limited judgment against Viewcrest. In other words, although the court signed and entered a judgment that it erroneously designated to be a general judgment, its error was an unintentional error that did not reflect an exercise of the judicial function and, hence, was one that the court could correct as a clerical error under ORCP 71 A.

In reaching that conclusion, we rejected the defendants' argument that the erroneous designation of the judgment as a general judgment was a judicial error because it embodied a legal determination that only a judge could make. We explained that the argument focused "too narrowly on the *type* of decision involved, ignoring whether that decision was the deliberate result of the court's reasoning and determination." 299 Or App at 162. We reiterated that point in rejecting the defendants' related argument that the attorney who submitted the general judgment to the court

necessarily exercised legal judgment in doing that and, hence, did not make a clerical mistake in submitting that judgment, explaining that the "argument misses the mark; the proper inquiry focuses on the degree of conscious and purposeful judicial decision-making—not the identity of the person—involved in making the error." *Id*.

I believe that the distinction that we applied in *Yarbrough* between clerical and judicial errors applies to the instructional error at issue in this case. Most instructional errors are the product of deliberate judicial decision-making. So understood, most such errors might not constitute an irregularity in the proceedings of the court that could be corrected under ORCP 64 B(1). Here, however, the instructional error was *not* the result of a conscious decision by the court to omit from the instructions the required instructions on a culpable mental state. As I have explained, the record supports a finding that the parties and the court intended to instruct the jury in accordance with the uniform criminal jury instructions on the charged crimes, which include a culpable mental state as an element that the jury must find to convict a defendant of the crimes. Because of inadvertence, that is, because of a process that did *not* reflect a conscious decision by the court to act as it did, the court omitted from its instructions the required instructions on the culpable mental state. In other words, the court committed the same type of error that we treated as a clerical rather than judicial error in *Yarbrough*, *viz*., an error that did *not* reflect an exercise of the judicial function because it was not "the deliberate result of the court's reasoning and determination." *Yarbrough*, 299 Or App at 162.

The principle that I apply here to uphold the grant of a new trial under ORCP 64 B(1) is consistent with our cases in which we have applied the rule. In each case in which we have reversed a grant of a new trial under ORCP 64 B(1), the error at issue was one that involved an exercise of the judicial function and, hence, did not represent an irregularity of the court in conducting the proceedings.

For example, in *Silberman-Doney v. Gargan*, 256 Or App 263, 303 P3d 333 (2013), the trial court mistakenly advised the parties that the defendants would be entitled to

an award of attorney fees if they prevailed at trial, which advice led the parties to settle the case. The court thereafter told the parties that it had been mistaken in asserting that the defendants could recover attorney fees, which led the plaintiff to seek, and the court to grant, a new trial under ORCP 64 B(1) on the ground that the court's erroneous statement to the parties on the defendants' potential entitlement to attorney fees constituted an irregularity in the proceedings. We reversed the grant of a new trial, concluding that trial court "rulings on legal issues bearing on a trial are to be expected and, of course, occur regularly." *Id*. at 271. We properly concluded, in other words, that the trial court had not deviated from normal trial practice by announcing a tentative ruling on a legal question that it later concluded was erroneous. As importantly, the court's error reflected an exercise of the judicial function, because the court acted deliberately in giving the advice on attorney fees that it did. In other words, although we did not apply the judicial-function distinction in deciding the case, our decision is consistent with that distinction and, in my view, should be understood to have applied it.

Similarly, we concluded in *McCollum* that a trial court denial of a request for an *in camera* inspection of documents and the grant of a motion *in limine* were not irregularities in the proceedings under ORCP 64 B(1) because "the submission and consideration of those matters conformed to well-established practice." 228 Or App at 113. Here again, although not framed this way in our decision, the trial court's actions represented an exercise of the judicial function and, hence, were actions that would not qualify as irregularities under the standard that I apply here.

The majority rejects the distinction that I draw in this case between court errors that are clerical in nature and subject to correction as irregularities under ORCP 64 B(1) and those that represent an exercise of the judicial function and, hence, might not be subject to correction as irregularities under that rule. In its view, instructional errors by a trial court that could be subject to an objection or exception are not errors that can be corrected through the grant of a new trial under ORCP 64 B(1). Errors of that kind

can be corrected only under ORCP 64 B(6). According to the majority, my construction of the rule would "essentially render meaningless ORCP 64 B(6)'s requirement that parties must object or except to errors of law." 299 Or App at 802.

As I have explained, the distinction that I apply would exclude most instructional errors from correction under ORCP 64 B(1) because most instructional errors involve an exercise of the judicial function. Hence, the majority is wrong to conclude that the grant of a new trial under the circumstances of this case would render meaningless ORCP 64 B(6)'s requirement that parties must object to legal errors.

Moreover, that instructional error may, in circumstances such as those here, constitute an irregularity of the court for which a new trial may be granted under ORCP 64 B(1) does not affect the importance of ORCP 64 B(6) and the process by which parties seek and except to jury instructions. Neither parties nor trial courts will diminish their efforts to conduct trials according to law in the off chance that a failure to do that might provide a basis for a court to grant a new trial under ORCP 64 B(1). And parties who object and except to court rulings will rely on ORCP 64 B(6) when seeking new trials based on their objections and exceptions, as will courts in granting them. In other words, ORCP 64 B(6) will continue to play its intended role as authority for courts to grant new trials in the circumstances in which it applies, and it will remain the principal means by which instructional errors can be corrected through the grant of a new trial.

I believe that ORCP 64 B(1) is intended to give trial courts authority to grant new trials for instructional errors of the type at issue in this case. The majority's construction of the rule denies them that authority, which means that parties affected by those errors will have to seek plain-error review by us on appeal to correct them, with the attendant expense and delay. I do not see the benefit in that and do not believe that it reflects the policies that the rule is intended to serve.

In sum, I believe that the trial court acted within its authority under ORCP 64 B(1) to grant defendant a new

trial in this case. I respectfully dissent from the majority's contrary conclusion.

Egan, C. J., and Ortega, DeHoog, James, and Aoyagi, JJ., join in this dissent.